**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge Nora Barry Fischer |
| | ) | 2:17-cv-00032 |
| PLUM BOROUGH SCHOOL | ) | |
| DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

### I. INTRODUCTION

Presently before the Court are the respective Motions to Dismiss (Docket Nos. 21 and 24) filed by the Borough of Plum ("Plum") and Mark Kost ("Kost") (*collectively*, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek the dismissal of all claims asserted by Jane Doe ("Plaintiff") in her Complaint (Docket No. 1) of January 6, 2017. At Count I of said Complaint, Plaintiff asserts claims for violation of her due process rights under the Fourteenth Amendment to the Constitution of the United States. At Counts III and IV, Plaintiff also asserts claims of Intentional Infliction of Emotional Distress and Negligence against Kost. This Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367(a) (supplemental), and has previously ordered that all claims against Kost be dismissed, with prejudice, to the extent asserted against him in his official capacity. (Docket No. 33). For the reasons that follow, the Court will GRANT Defendants' Motions, in part, and DENY, in part.

## II. Factual[1] & Procedural Background

In late November or early December of 2014, Jason Cooper – a teacher at Plum Borough High School – offered Plaintiff guidance and support due to her withdrawn and depressed state of mind following the recent deaths of her mother and grandmother. (Docket No. 1 ¶¶ 31 – 32). Despite receiving a previous written reprimand in 2013 for contacting students outside of school, he offered Plaintiff his personal telephone number, and began to speak to her after-hours. (*Id.* ¶¶ 12, 33). The two would also communicate via Twitter, going so far as to create additional Twitter accounts after Plaintiff's phone was taken away by her father. (*Id.* ¶ 34).

Sometime later in December of 2014, Plaintiff first visited Cooper at his home. (Docket No. 1 ¶ 35). Cooper provided Plaintiff with alcoholic beverages, and she consequently spent the entire night at his residence. (*Id.* ¶ 36). On December 28, 2014, Plaintiff first kissed Cooper. (*Id.* ¶ 36). She was 17 years of age. (Docket No. 22 at 2). Thereafter, they would sometimes kiss in the classroom when no other students were present. (Docket No. 1 ¶ 37). Cooper would also fondle Plaintiff and talk to her in an openly sexual manner. (*Id.* ¶ 40). On or about January 16, 2015, when Cooper moved to a new place of residence, he and Plaintiff first engaged in sexual intercourse. (*Id.* ¶¶ 38 – 39). Plaintiff was 18 years of age by that time, and she and Cooper had intercourse on five or six more occasions before February of 2015. (*Id.* ¶¶ 29 – 30, 41).

Prior to – and throughout – this period of time, another Plum Borough High School teacher, Joseph Ruggieri,[2] was engaging in illicit relationships with at least two female students.

---

[1] As discussed, *infra*, on page 6, the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)).

[2] The Court has had the benefit of the pleadings and motions practice in the related case of *Doe v. Plum Borough Sch. Dist., et al.*, 2:16-cv-1483, involving the alleged misconduct of Ruggieri. The case resolved following mediation and a settlement conference with Magistrate Judge Lisa Pupo Lenihan.

(Docket No. 1 ¶¶ 68 – 183). Ruggieri was considered by many to be the most influential teacher at the school as Vice President of the Plum Borough Education Association and as a personal friend of Plum Borough High School principal, Ryan Kociela. (*Id.* ¶¶ 68, 70, 72). Ruggieri acted as a liaison between the teachers and the school administration, and often provided instruction to his co-workers on the topic of proper student-teacher interaction. (*Id.* ¶ 69).

However, at least as early as 2011, rumors that Ruggieri was in a sexual relationship with a student were circulating in the high school. (Docket No.1 ¶¶ 77, 80 – 81). A Plum Borough High School guidance counselor by the name of Kerry Plesco reported the rumors to Kociela in the fall of 2011. (*Id.* ¶¶ 79, 81). Kociela responded that he needed "something factual" to pursue the matter. (*Id.* ¶ 81). Plesco reported similar rumors to Kociela on at least ten more occasions during the 2011 – 2012 school year. (*Id.* ¶ 82). In December of 2011, Plum Borough High School Air Force ROTC instructor, Scott Kolar, also reported such rumors to Kociela. (*Id.* ¶¶ 83 – 84). Kociela asked Kolar to simply "slip an anonymous note under the door" the next time. (*Id.* ¶ 85).

Kociela did eventually bring the rumors to the attention of then-superintendent, Lillian Naccarati and solicitor, Lee Price, Esquire. (Docket No. 1 ¶ 86). Plum Borough High School's resource officer of 13 years, Kost, was also informed of same. (*Id.* ¶¶ 7, 86 – 87, 101). Naccarati assigned assistant superintendent, Timothy Glasspool, to investigate the rumors with Kociela. (*Id.* ¶ 87). Kociela and Glasspool met with Ruggieri in late December 2011, and Kociela and Plesco met with the first of Ruggieri's victims and her parents shortly thereafter. (*Id.* ¶¶ 87 – 96). Despite having doubts regarding all parties' denials of improper conduct, at a December 20, 2011 meeting attended by Naccarati, Glasspool, Price, Kociela, Plesco, and Kost, Kociela and Glasspool argued that the investigation was inconclusive. (*Id.* ¶¶ 98 – 100). As

such, Kost concluded that no charges were warranted, and the matter was considered to be closed. (*Id.* ¶¶ 100 – 01).

Another report of inappropriate conduct by Ruggieri was subsequently received by Kociela and Kost from former Plum Borough High School security guard, Tanya Oslowski. (Docket No. 1 ¶¶ 103 – 08). Oslowski was informed that the administration was aware of the allegations and an investigation was being conducted. (*Id.* ¶¶ 106 – 08). When Oslowski followed up a few days later with Kost, she was simply told, "no victim, no crime." (*Id.* ¶¶ 109 – 10).

When Plesco continued to raise concerns about rumors of Ruggieri's relationship with his first victim during the 2012 – 2013 school year, Kociela and Plum Borough High School assistant principal, Michael Loughren, convened a meeting with the victim and her stepfather. (Docket No. 1 ¶¶ 126 – 27). The student continued to deny any impropriety in her contact with Ruggieri; although, she did admit to exchanging emails with him. (*Id.* ¶ 143). While Loughren credited her account of her relationship with Ruggieri, he was left with an "uncomfortable feeling," which he later raised with both Kociela and Kost. (*Id.* ¶¶ 130 – 33). Kost informed Loughren that the issue was an "internal matter" that should be kept between him, Kociela, and Kost. (*Id.* ¶ 132). Kost instructed Loughren not to involve the police. (*Id.* ¶ 133).

On or about January 16, 2015, former Plum Borough High School teacher, Dennis Swogger, reported to Kociela that he had personal knowledge of inappropriate communications between Cooper and Plaintiff. (*Id.* ¶ 15). Kociela subsequently interviewed three teachers and five students, and then Cooper. (*Id.* ¶¶ 16, 18). He also secured copies of Twitter communications between Cooper and Plaintiff, and while Cooper acknowledged such contact with her, he denied any activity of a sexual nature. (*Id.* ¶¶ 20 – 21). Despite these denials,

Kociela reported his findings to Kost by way of "formal complaint" on January 28 or 29, 2015. (*Id.* ¶ 17). In fact, Kociela told Kost that one of the interviewed students described the true nature of Cooper and Plaintiff's relationship. (*Id.* ¶ 22).

Yet, Kost did not contact outside authorities and did not assume control of the investigation (*Id.* ¶¶ 17 – 22, 26), adhering to a policy to steer complaints to internal investigation and avoid involvement of ChildLine or the County Office of Children, Youth, and Families. (*Id.* ¶¶ 238 – 39). It was also Kost's practice to shield teachers by not documenting rumors regarding victims of inappropriate student-teacher relations. (*Id.* ¶¶ 185, 188 – 89, 242). Plum never educated or trained Kost regarding mandatory reporting obligations; documentation of meetings, warnings, and accusations of illicit student-teacher relationships; institutional sexual assault and corruption of minors; conducting fair and uncompromised investigations with school administration; when and how to take over school investigations; when to close an investigation; student-teacher boundaries; and investigating allegations of student-teacher sexual relations. (*Id.* ¶ 258).

On February 2, 2015, Kociela met with Plum Borough Police detective, Mark Focareta. (Docket No. 1 ¶ 27). He provided Focareta with the Twitter correspondence he obtained. (*Id.* ¶ 28). Eight days later, Plaintiff spoke with Focareta and Kost, and explained that she was having an ongoing sexual relationship with Cooper. (*Id.* ¶¶ 29 – 30). Cooper was arrested the following day. (*Id.* ¶ 43). He ultimately pled guilty to felony institutional sexual assault, misdemeanor corruption of minors, furnishing alcohol to a minor, and witness intimidation, resulting in an 18 – 36 month prison sentence. (*Id.* ¶ 66).

Plaintiff filed the present Complaint on January 6, 2017. (Docket No. 1). Motions to Dismiss (Docket Nos. 21 and 24) followed on March 10, 2017. Responses were made on March

31, 2017 (Docket Nos. 31 and 32), and a Reply thereto was docketed on April 21, 2017 (Docket No. 39). Given the dispositive nature of the Motions, the Court convened a hearing and held oral argument on May 10, 2017. (Docket No. 41). The matter is ripe for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"

*Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assoc., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of…facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. DISCUSSION

### A. Count I

In her Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against both Plum and Kost. (Docket No. 1 at 27 – 34). Specifically, Plaintiff argues that – under the Fourteenth Amendment – she has a liberty interest in her bodily integrity and the right to be free from sexual assault, that her rights were clearly defined at the time of the events at issue, and that she was denied due process when her rights were violated as a direct result of the deliberate indifference of Plum and Kost. (*Id.* at 27). Plaintiff's claims are grounded in the state-created danger and failure to investigate theories of liability, as well as the holding in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). (*Id.* at 27 – 34). In defense, Plum and Kost deny that

Plaintiff has pled facts sufficient to sustain her Fourteenth Amendment claim under these theories.

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

Section 1983 serves as a means of vindicating violations of federal constitutional and statutory rights. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In order to properly state a valid § 1983 claim, a plaintiff must demonstrate that a person acting under color of law violated enumerated constitutional or statutory rights. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). "'The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Dorley v. South Fayette Twp. Sch. Dist.*, 129 F.Supp.3d 220, 226 (W.D. Pa. 2015) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).

### 1. *Substantive Due Process*

To the extent that Plaintiff is alleging due process violations,[3] the Court notes that the Fourteenth Amendment "provides procedural and substantive protections to citizens by ensuring

---

[3]     Plaintiff makes a passing reference to the deprivation of "equal protection rights" in Count I of the Complaint. (Docket No. 1 ¶ 234). A Constitutional right to freedom from sexual discrimination, including "sexual harassment perpetrated by government officials in a public school," is conferred by the Equal Protection Clause of the Fourteenth Amendment. *S.K. v. N. Allegheny Sch. Dist.*, 168 F.Supp.3d 786, 812 (W.D. Pa. 2016). The Third Circuit Court of Appeals has previously recognized that in order to "'bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.'" *Suber v. Guinta*, 927 F.Supp.2d 184, 201 (E.D. Pa. 2013) (quoting *Andrews v. Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). He or she must show that they were treated differently than other similarly situated individuals. *Id.* Defendants do not argue in their Motions to Dismiss that Plaintiff has failed to make such a showing. Nonetheless, it is apparent to the Court that Plaintiff has not pled a cause of action pertaining to violation of equal protection rights.

that states shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Dorley*, 129 F.Supp.3d at 226 (quoting U.S. Const. amend. XIV, § 1). However, it has generally been held that the Fourteenth Amendment imposes no obligation upon government or government officials to intervene to protect citizens from private violence. *Fetterman v. Westmoreland Cnty. Childrens Bureau*, -- F.App'x --, 2017 WL 888216, at *3 (3d Cir. 2017) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 486 U.S. 189, 196 – 97 (1989)). Deprivation of bodily integrity "does not have distinct legal standing on its own." *Dorley*, 129 F.Supp.3d at 231 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)). Thus, the state-created danger theory was conceived as a narrow exception to address situations in which "'the state acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of the state intervention.'" *Fetterman*, 2017 WL 888216, at *3 (quoting *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)).

In order for Plaintiff to state a substantive due process claim under the state-created danger theory of liability, the following must be shown:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts… and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Dorley*, 129 F.Supp.3d at 232 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

As to the first element, foreseeability "requires that officials were actually aware, and thus on notice, of the risk of harm." *Id.* at 233 (citing *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013)). "Fairly direct" refers to actions that cannot be "'separated from the ultimate

harm by a lengthy period of time and intervening forces and actions.'" *Id.* (quoting *Henry*, 728 F.3d at 285). Plaintiff alleges that Kost was aware of Ruggieri's misconduct at least as early as the December 2011 meeting with Superintendent Naccarati and Solicitor Price. It is also averred that Kost had knowledge of multiple reports of Ruggieri's misconduct from several other sources. Cooper's activities with Plaintiff were then brought to light on or about January 28 or 29, 2015, by which time, Cooper was actively sexually abusing Plaintiff. Accordingly, Kost clearly had knowledge that students in the school were at risk of harm by a sexually predatory teacher. In knowing of this risk, any action to hamper a full investigation, in this Court's estimation, constitutes a fairly direct cause of harm.

Plaintiff alleges that the pervasive rumors of student-teacher impropriety at Plum Borough High School, and the efforts by Kost and administrative officials to downplay and conceal same, provided Cooper with the cover necessary to engage in continued inappropriate contact with students. (Docket No. 1 ¶¶ 262). Indeed, Plaintiff avers that it was the practice of Plum to allow Kost to encourage internal investigation of illicit student-teacher relationships, and to discourage involvement of the police department or other outside authority in order to protect teachers. (*Id.* ¶¶ 239). As previously noted by the Court at oral argument, there was an affirmative duty on the part of law enforcement[4] to report suspected child abuse pursuant to Pennsylvania's Child Protective Services Law,[5] 23 Pa. Cons. Stat. § 6301, *et seq.* (Docket No.

---

[4]    Similarly, there is an affirmative duty upon teachers to make such reports. *Swanger v. Warrior Run Sch. Dist.*, 2012 WL 2395675, at *3 n. 2 (M.D. Pa. June 25, 2012). *See also* footnote 5, *infra*.

[5]    Pennsylvania's Child Protective Services Law has been in existence in some form since November 26, 1975, and instituted procedures concerning the investigation and reporting of potential abuse. *V.B.T. v. Family Servs. of Western Pa.*, 705 A.2d 1325, 1335 – 36 (Pa. Super. Ct. 1998); *Commw. v. Ritchie*, 502 A.2d 148, 151 (Pa. 1985). The current iteration states that:

    **Purpose.--**It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of

investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa. Cons. Stat. § 6302. Further, § 6303 of the law provides as follows:

**"Person responsible for the child's welfare."** A person who provides permanent or temporary care, supervision, mental health diagnosis or treatment, training or control of a child in lieu of parental care, supervision and control.

**"Police department."** A public agency of a political subdivision having general police powers and charged with making arrests in connection with the enforcement of criminal or traffic laws.

**"Sexual abuse or exploitation."** Any of the following:
(1) The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following:
> (i) Looking at the sexual or other intimate parts of a child or another individual for the purpose of arousing or gratifying sexual desire in any individual.
> (ii) Participating in sexually explicit conversation either in person, by telephone, by computer or by a computer-aided device for the purpose of sexual stimulation or gratification of any individual.
> (iii) Actual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual.
> (iv) Actual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming.

This paragraph does not include consensual activities between a child who is 14 years of age or older and another person who is 14 years of age or older and whose age is within four years of the child's age.

Additionally, the Court notes that:

**(a) Mandated reporters.**--The following adults shall make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:
> …
>
> (4) A school employee.
> …
>
> (7) An individual paid or unpaid, who, on the basis of the individual's role as an integral part of a regularly scheduled program, activity or service, is a person responsible for the child's welfare or has direct contact with children.
> …
>
> (9) A peace officer or law enforcement official.

…

**(b) Basis to report.**--

42 at 22 – 23). The record before the Court does not reference reporting, here. Thus, the customs, practices, and policies of Plum and Kost created an opportune environment for abuse. (*Id.* ¶ 263). Viewed in the light most favorable to Plaintiff, these allegations of fact demonstrate that the harm to Plaintiff was not only foreseeable, but fairly direct. The first element has, therefore, been satisfied.

The second element necessitates allegations of fact which suggest state officials acted with deliberate indifference or the intent to cause harm. *Dorley*, 129 F.Supp.3d at 234 (citing *Schieber v. City of Phila.*, 320 F.3d 409, 419 (3d Cir. 2003)). However, when the circumstances are such that a state actor had adequate time to deliberate on his or her actions, a showing of deliberate indifference will suffice to demonstrate a level of culpability that shocks the conscience. *Patrick v. Great Valley Sch. Dist.*, 296 F.App'x 258, 261 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 240).

Ruggieri was involved in inappropriate relationships with female students beginning at least as far back as 2011, and continuing through 2015. (Docket No. 1 ¶¶ 68 – 183). During this time, Cooper began his relationship with Plaintiff. Cooper had also been reprimanded previously

---

> (1) A mandated reporter enumerated in subsection (a) shall make a report of suspected child abuse in accordance with section 6313 (relating to reporting procedure), if the mandated reporter has reasonable cause to suspect that a child is a victim of child abuse under any of the following circumstances:
>
> > (i) The mandated reporter comes into contact with the child in the course of employment, occupation and practice of a profession or through a regularly scheduled program, activity or service.
> > (ii) The mandated reporter is directly responsible for the care, supervision, guidance or training of the child, or is affiliated with an agency, institution, organization, school, regularly established church or religious organization or other entity that is directly responsible for the care, supervision, guidance or training of the child.
> > (iii) A person makes a specific disclosure to the mandated reporter that an identifiable child is the victim of child abuse.

23 Pa. Cons. Stat. § 6311. When acting in good faith, those individuals filing reports pursuant to the law are entitled to immunity from civil liability. *Feistl v. Luzerne Intermediate Unit*, 2016 WL 1162325, at * 7 (M.D. Pa. Mar. 24, 2016). In spite of Kost's mandatory duty to report, and the immunity which flows from the proper execution of this duty, there is no indication that Kost made reports in conformity with the law.

for improper contact with students. (Docket No. 1 ¶ 12). As the school resource officer for approximately 13 years, Kost allegedly had longstanding knowledge of Cooper and Ruggieri's propensities. (*Id.* ¶¶ 7, 86 – 87, 101). Nonetheless, Kost – in conjunction with school administrators – allegedly acted to hide rumors of Ruggieri's misconduct, dissuade reporting of same, and avoid outside investigations over a lengthy period of time. (*Id.* ¶¶ 17 – 22, 26, 100 – 01, 109 – 10, 132 – 33, 185, 188 – 89, 238 – 39, 242). To say that Kost had ample opportunity to deliberate his course of action, based upon the allegations of Plaintiff – is an understatement. As the requisite degree of culpability has an inverse relationship with time, his deliberate indifference is enough to "shock the conscience."

Deliberate indifference exists when a party has consciously disregarded a substantial risk of serious harm, or when a risk of harm is so patently obvious that that party should have known of it. *L.R. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016). Assuming the truth of the facts as asserted by Plaintiff, as this Court must, the deliberate cover-up of the sexual indiscretions of a prominent teacher over a period of years creates a substantial risk of serious harm to students like Plaintiff.[6] If Kost was not aware of this risk, he should have been, especially given his role as the school resource officer and liaison with the police department[7], and what should have been

---

[6]     Citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 283 – 84 (3d Cir. 2006), Plum believes that Plaintiff is arguing "emboldenment" of Cooper by failure to act against Ruggieri, and that such a claim is not a proper basis for liability. (Docket No. 22 at 17). The Court finds the present case to be factually distinguishable because, unlike *Bright*, wherein the defendant allegedly failed to act with sufficient urgency to prevent harm, Kost allegedly took affirmative steps to conceal inappropriate conduct and dissuade reporting of same. Thus, the "emboldenment" argument is unavailing, here.

[7]     At oral argument, counsel for Kost explained that the "original purpose" of Kost's position was "not just to have somebody there as a measure of protection, but also intelligence in terms of issues that may come up with students." (Docket no. 42 at 5 – 6).

his training in that role[8] and as a police officer[9]. Thus, the second element is satisfied at this stage in the litigation.

With respect to the third element, "[i]n the state-created danger context, the relationship between a state and a plaintiff need not be 'custodial'… but rather requires contact between the parties such that the plaintiff was a foreseeable victim in tort." *Knellinger v. York Street Prop. Dev., LP*, 57 F.Supp.3d 462, 470 (E.D. Pa. 2014) (citing *Brown v. Commw. of PA, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003)). As the school resource officer charged with liaising between the school district and police department and monitoring the well-being of the students, Kost's attempts to obscure Ruggieri's conduct from scrutiny would clearly have the effect of endangering students, particularly with respect to predatory conduct by other problem teachers. As the non-moving party, Plaintiff's allegations of fact are sufficient to meet the third element, in this Court's estimation.

---

[8]     The Court notes that the National Association of School Resource Officers provides courses and training programs for school-based law enforcement personnel, and was founded in 1991. National Association of School Resource Officers, https://nasro.org/ (last visited August 11, 2017). One recently listed program titled, "School Law Update," includes instruction on "Sexual Harassment Issues" and "Due Process and Civil Liability," and is taught by Professor of Constitutional Law, Bernard James, of Pepperdine University. *Id.* The cost for the eight-hour session is $199.00. *Id.* The mailing address for Pennsylvania's state affiliate is also listed on the national association's website, as is the contact information for the President, Jeffrey Sgro of the South Fayette Township Police Department, and the Vice President, William Oslick of the Collier Township Police Department. *Id.*

[9]     Although Kost was always a police officer employed by Plum, Plum benefited from monies paid pursuant to a "memorandum of understanding" between it and the school district, and had the support of a competent solicitor who could have advised and trained Kost. (Docket No. 42 at 4 – 5, 23, 31). The Court notes that the Pennsylvania School Board Solicitors Association, a department of the Pennsylvania School Boards Association, provides support and educational materials for solicitors. PSBA, https://www.psba.org/legal/solicitors-association/ (last visited August 11, 2017). An article posted on the Association's website in October 2016 relates directly to the instant case: "School Resource Officers: What are Districts' Responsibilities?" *Id.* The Court also notes that the Pennsylvania Department of Education provides several examples of an acceptable memorandum of understanding for use in such situations. *See* Model Memorandum of Understanding, http://www.education.pa.gov/Documents/K-12/Safe%20Schools/Model%20Memorandum%20of%20Understanding%20with%20Law%20Enforcement%20Agency.pdf (last visited August 11, 2017) (explicitly outlines types of offenses for which reporting is required); Department of Education Office for Safe Schools Targeted Grants for School Resource Officer, Municipality/Police Department Request for Application 2017-2018, http://www.education.pa.gov/Documents/K-12/Safe%20Schools/Safe%20Schools%20Targeted%20Grants/2017-2018/2017-2018%20Safe%20Schools%20Initiative%20-%20Municipality%20SRO%20-%20RFA.pdf (last visited August 11, 2017) (providing two acceptable example memoranda of understanding).

Finally, as to the fourth element, affirmative action does not encompass omissions or inaction. *Dorley*, 129 F.Supp.3d at 237. The failure to act is not the affirmative exercise of authority. *Id.* (citing *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013)). To this end, a district court must determine whether state actors "created or increased the risk," as opposed to whether they merely "might have done more" to prevent harm. *Id.* Here, the Complaint clearly demonstrates that:

- Cooper had a history of inappropriate contact with students;

- rumors had persisted for years regarding Ruggieri's improper relationships with students;

- Kost was well aware of the rumors surrounding Ruggieri; and

- Kost took steps to dissuade high school personnel from reporting such rumors and kept investigations of improper conduct within the school.

Hence, no reports were made in accordance with Pennsylvania's Child Protective Services Law. Kost's efforts to prevent Ruggieri's activities from coming to light placed students – like Plaintiff – at greater risk than had he not attempted to protect a notoriously predatory teacher. Accordingly, the fourth element has been established.

### 2. Municipal Liability

Plaintiff also attempts to extend her substantive due process claim against Kost to Plum Borough, arguing that Plum's policies and customs resulted in the allegedly harmful conduct by Kost. Courts recognize that municipal government units may constitute "persons" against whom a claim may be raised under § 1983. *Jackson v. City of Erie Police Dep't*, 570 F.App'x 112, 114 n. 2 (3d Cir. 2014). However, a plaintiff cannot premise liability upon a theory of *respondeat superior* or vicarious liability. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d

572, 580 (3d Cir. 2004). "A 'person' is not the 'moving force behind the constitutional violation' of a subordinate, unless that 'person' – whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). Thus, in order to demonstrate municipal liability for a constitutional violation under § 1983, a claimant must identify a municipal policy[10] or custom[11] that caused same. *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997)); *Williams v. Guard Bryant Fields*, 535 F.App'x 205, 210 – 11 (3d Cir. 2013).

Courts have identified three fact patterns whereby the acts of municipal personnel may be imputed to a policy or custom of a municipal entity, rendering the municipal entity liable under § 1983: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;'" (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;'" and (3) "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan Cnty.*, 520 U.S. at 417 – 18). The inquiry does not end there; a claimant must then establish that the municipal

---

[10] "A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict.'" *Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).

[11] A custom "is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale*, 318 F.3d at 584 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). A custom may be shown with evidence of "knowledge and acquiescence." *Mori v. Allegheny Cnty.*, 51 F.Supp.3d 558, 569 (W.D. Pa. 2014) (quoting *Fletcher v. O'Donnell*, 867 F.2d 791, 793 – 94 (3d Cir. 1989)).

policy or custom was the proximate cause of his or her injuries. *Kneipp*, 95 F.3d at 1213. A claimant "must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's policy or custom and the specific deprivation of constitutional rights at issue." *Id.* As long as the link is not too tenuous, the jury should be left to decide whether the municipal entity's policy or custom caused the alleged constitutional violation. *Id.*

Plaintiff proceeds under the third scenario, arguing that Plum is responsible for the activities of Kost due to a policy or custom "whereby their school resource officer would step aside and allow the Plum Borough School District to conduct its own compromised investigations of possible serious crimes, including sexual assault." (Docket No.1 ¶ 239). Plaintiff attempts to demonstrate the existence of deliberate indifference by way of Plum's alleged failure to train Kost. This failure to train must reflect Plum's "'deliberate indifference to the constitutional rights of its inhabitants.'" *Doe v. Southeast Delco Sch. Dist.*, 140 F.Supp.3d 396, 402 (E.D. Pa. 2015) (quoting *City of Canton, OH v. Harris*, 489 U.S. 378, 392 (1989)). To this end, a showing of awareness of, and acquiescence in, a pattern of constitutional violations, or of an obvious potential for such violations, will suffice. *Id.; Mann v. Palmerton Area Sch. Dist.*, 33 F.Supp.3d 530, 541 (M.D. Pa. 2014). *See also K.E. v. Dover Sch. Dist.*, 2016 WL 2897614, at *6 (M.D. Pa. May 18, 2016) ("[I]naction subsequent to one or more complaints of sexual abuse conveyed directly…may also manifest deliberate indifference.").

Presently, Plaintiff alleges that Plum was aware of the need to protect district students from sexual abuse, vis-à-vis Pennsylvania's mandatory reporting laws, that Plum was aware of Kost's history of deficient documentation of school incidents (Docket No. 1 ¶ 185), and that in spite of this knowledge, Kost was not trained in numerous areas. (*Id.* ¶ 253). According to Plaintiff, this amounts to deliberate indifference. Viewing these allegations in the light most

favorable to the non-moving party, the Court finds that Plum was a moving force behind Plaintiff's injury – that Plaintiff's improper relationship with Cooper was a highly predictable consequence of a failure to train. *See Doe v. Southeast Delco Sch. Dist.*, 140 F.Supp.3d 396, 402 (E.D. Pa. 2015) (In light of Pennsylvania's mandatory reporting laws, and officials' knowledge of the need to protect students from sexual abuse, failure to act to implement more rigorous training and oversight amounts to deliberate indifference); *K.E.*, 2016 WL 2897614, at *7 ("The averred facts support an inference that District policymakers were actually or constructively aware of student reports…and of the potential for deficiencies in employee training."). Whether evidence of same can be produced will be resolved at a later stage of this litigation. *Id.* For now, Plaintiff has met her burden with respect to *Monell*. *See K.E.*, 2016 WL 2897614, at *7 ("Notwithstanding some degree of provisional vagueness, 'discovery will reveal the precise roles of all involved,' and illuminate which District employees became privy to pertinent information and at what time."). *Cf. Nave v. Pennridge Sch. Dist.*, 185 F.Supp.3d 564 (E.D. Pa. 2016) (On cross-motions for summary judgment, the district court found in favor of defendants as to plaintiff's failure to train claim, because the record evidence did not show that sexual abuse by school staff was highly predictable, or that the failure to train actually caused the sexual abuse at issue).

### 3. Failure to Investigate/Reckless Investigation

It is generally understood that the Third Circuit Court of Appeals has not explicitly recognized a claim for reckless investigation. *K.L.Q. v. Plum Borough Sch. Dist.*, 2016 WL 2892174, at *6 (W.D. Pa. May, 17, 2016) (Lenihan, M.J.). Further, the "'contours of a stand-alone claim for failure to investigate are not well-defined within this Circuit.'" *Kelly v. Jones*, 148 F.Supp.3d 395, 400 (E.D. Pa. 2015) (quoting *Briscoe v. Jackson*, 2 F.Supp.3d 635, 645 n. 5

(E.D. Pa. 2014)). Nonetheless, some courts have allowed such claims when a plaintiff shows that "'a police officer acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate.'" *Id.* (quoting *Thomas v. Stanek*, 2015 WL 757574, at *7 (W.D. Pa. Feb. 23, 2015) (McVerry, J.)). These claims are typically asserted under circumstances in which a police officer arrested the plaintiff without conducting an adequate investigation beforehand.[12] "'Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence.'" *Johnson v. Logan*, 2016 WL 7187842, at *6 (W.D. Pa. Dec. 12, 2016) (Bissoon, J.) (quoting *Stanek*, 2015 WL 757574, at *7).

In the present case, Plaintiff attempts to extend this claim to cover instances in which a police officer fails to arrest a third party due to a reckless investigation. Even in the context of claims filed by arrestees, many courts do not recognize a separate claim for reckless investigation,[13] let alone for reckless investigation as it pertains to the failure to arrest *another person*. Given Plaintiff's lack of citation to any binding precedent, or otherwise persuasive authority, to support her argument, the Court will not extend the cause of action for failure to

---

[12]    *See Johnson v. Logan*, 2016 WL 7187842 (W.D. Pa. Dec. 12, 2016) (Claimant convicted of – and later exonerated for – murder); *Geness v. Cnty. of Fayette*, 2016 WL 6652758 (W.D. Pa. Nov. 9, 2016) (Mentally ill claimant held in custody following assault and death of fellow group home resident); *K.L.Q. v. Plum Borough Sch. Dist.*, 2016 WL 2892174 (W.D. Pa. May, 17, 2016) (Claimant acquitted of disorderly conduct charge); *Kelly v. Jones*, 148 F.Supp.3d 395, 400 (E.D. Pa. 2015) (Claimant wrongfully held in jail for five weeks); *Thomas v. Stanek*, 2015 WL 757574 (W.D. Pa. Feb. 23, 2015) (Claimant acquitted of murder charges); *Briscoe v. Jackson*, 2 F.Supp.3d 635, (E.D. Pa. 2014) (Claimants detained and charged with criminal trespass and disorderly conduct); *Whitley v. Allegheny Cnty.*, 2010 WL 892207 (W.D. Pa. Mar. 9, 2010) (Claimant convicted of – and later exonerated for – murder); *Barton v. Curtis*, 2008 WL 5082415 (D.V.I. Nov. 25, 2008) (Claimant arrested for removing children from Virgin Islands against court order). *See also Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (Recognizing a substantive due process cause of action for reckless investigation where the claimant's liberty interest is in "obtaining fair criminal proceedings.").

[13]    *See Hernandez v. Terrones*, 397 F.App'x 954, 965 (5th Cir. 2010) (Holding that there is no independent constitutional claim for being subjected to a reckless investigation, only that evidence of a reckless investigation can support claims for other constitutional violations); *Grega v. Pettengill*, 123 F.Supp.3d 517, 535 – 36 (D. Vt. 2015) (Finding that the Second Circuit Court of Appeals has yet to recognize a substantive due process cause of action for reckless investigation, and that numerous district courts in the Second Circuit have rejected "failure to investigate" as a stand-alone violation of due process); *Tinney v. Richland Cnty.*, 2016 WL 397963, at *7 (N.D. Ohio Feb. 2, 2016) (Holding that the Sixth Circuit Court of Appeals has not recognized a substantive due process claim for reckless investigation, and that district courts in the Sixth Circuit have explicitly rejected such claims).

investigate/reckless investigation to cover the instant case. This claim will, therefore, be dismissed, with prejudice.

### 4. *Qualified Immunity*

It is well settled that government officials performing discretionary functions are shielded from liability for damages under 42 U.S.C. § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Mirabella v. Villard*, -- F.3d --, 2017 WL 1228552, at *3 (3d Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011)). When analyzing a defendant's qualified immunity argument, the district court is required to engage in a two-step analysis: (1) the court must determine whether the facts show that the defendant's conduct violated a constitutional right; and (2) that it would have been clear to a reasonable officer under the same circumstances that the defendant's conduct was unlawful. *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "'A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Southeast Delco Sch. Dist.*, 140 F.Supp.3d at 404 (quoting *Reedy v. Evanson*, 615 F.3d 197, 223 – 24 (3d Cir. 2010)).

In *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989), the Third Circuit Court of Appeals held that the right of students not to be sexually abused by school officials is clearly established law. *Southeast Delco Sch. Dist.*, 140 F.Supp.3d at 404. The Court specifically held that "'officials may not with impunity maintain a custom, practice or usage that communicated condonation or authorization of assaultive behavior.'" *Id.* (quoting *Stoneking*, 882 F.2d at 730). Immunity was thus denied to two defendants found to have "'discouraged and minimized reports of sexual misconduct by teachers.'" *Id.*

As presently averred by Plaintiff, Kost's acts created a climate in which predatory teachers were free to victimize students. He was not simply engaged in "indefensible passivity," but sought to avoid external investigation of rumors of sexual misconduct by Ruggieri, and actively dissuaded other school employees from making reports. Because there is "no uncertainty over the rights of school children to be protected from deliberate exposure to an abusive teacher," *Southeast Delco Sch. Dist.*, 140 F.Supp.3d at 404, Plaintiff's factual allegations – when taken as true – are sufficient to justify the denial of qualified immunity at this stage in the proceedings.

The Court is mindful that the issue of qualified immunity should be resolved as early as possible. *Mann*, 33 F.Supp.3d at 542. Nevertheless, the reality is that "'factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Id.* (quoting *Phillips*, 515 F.3d at 242 n. 7). Given Plaintiff's averments, application of qualified immunity would be premature, here. *Id.* Defendants are free to raise the issue anew at a later stage.

## B. Count III

At Count III of the Complaint, Plaintiff asserts a claim against Kost for Intentional Infliction of Emotional Distress ("IIED"). Although never formally recognized by the Supreme Court of Pennsylvania, in theory, such a claim requires showing that a defendant's conduct was: "(1) extreme and outrageous, (2) intentional or reckless, and (3) caused severe emotional distress." *Bryan v. Erie Cnty. Office of Children & Youth*, 861 F.Supp.2d 553, 585 (W.D. Pa. 2012). The conduct required for a finding of liability must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Hoy v. Angelone*, 720 A.2d

745, 754 (Pa. 1998)). In addition, a plaintiff must have experienced some physical harm as a result of the outrageous conduct. *Id.* (citing *Reedy*, 615 F.3d at 231 – 32). The tort is to be narrowly construed. *Id.* at 586 (citing *Shaffer v. Nat'l Can Corp.*, 565 F.Supp. 909, 914 (E.D. Pa. 1983)).

Plaintiff rests her claim upon the assertion that Kost intentionally concealed the inappropriate behavior of Ruggieri, dissuaded school personnel from reporting rumors of inappropriate student-teacher behavior, and created an environment in which Cooper – already disciplined for improperly contacting students online – was able to victimize Plaintiff. However, even if this showing is sufficient for purposes of establishing liability pursuant to the state-created danger theory, IIED requires a showing beyond the threshold required by deliberate indifference in the context of § 1983 cases. *Bryan*, 861 F.Supp.2d at 586. "Liability for intentional infliction of emotional distress is 'reserved by the courts for only the most clearly desperate and ultra extreme conduct.'" *Id.* at 585 (quoting *Hoy*, 720 A.2d at 754). To this end, it will not be enough to show that a defendant intended to commit a tort or crime, or that he or she intended to inflict emotional distress; the "'requisite intention which one must display for liability to be imposed is knowledge on the part of the actor that severe emotional distress is substantially certain to be produced.'" *Id.* (quoting *Hoffman v. Memorial Osteopathic Hosp.*, 492 A.2d 1382 (Pa. Super. Ct. 1985)).

Conduct previously acknowledged as sufficient to meet the intentional infliction of emotional distress standard has included: (1) a defendant striking and killing a plaintiffs' son with his automobile, failing to render aid or notify authorities, and burying the body in a field where it was discovered two months later and returned to plaintiffs, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970); (2) a defendant's intentional fabrication of records suggesting plaintiff

killed a third party, resulting in indictment of plaintiff for homicide, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981); and (3) a defendant's release of information suggesting that a plaintiff was suffering from a fatal disease, when the defendant knew the information to be untrue, *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 – 74 (3d Cir. 1979). Following consideration of the above, Plaintiff's claim for IIED must be dismissed. There is simply no indication, here, that Kost attempted to cover-up Ruggieri's conduct with the expectation that Plaintiff – specifically – would suffer severe emotional distress. *Bryan*, 861 F.Supp.2d at 587. Despite the egregious nature of Plaintiff's allegations, she has failed to plead a claim for IIED.

### C. Count IV

Plaintiff's final claim against Kost is for negligence under Pennsylvania law. It is contended that Kost breached his duty of care "by failing to adequately investigate, report or take any appropriate action to stop Cooper's unlawful conduct directed towards Jane Doe." (Docket No. 1 ¶ 288). Defendants respond by arguing that Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541, *et seq.* ("PSTCA"), provides immunity from same.

The PTSCA affords municipalities immunity from claims stemming from injury to a person or property as a result of any act of a municipality or municipal employee. *Basile v. Twp. of Smith*, 752 F.Supp.2d 643, 668 (W.D. Pa. 2010). This protection is extended to employees inasmuch as they were acting within the scope of their official duties. *Id.* (citing *Robbins v. Cumberland Cnty. Chidren & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002)). Abrogation of individual immunity may only be for acts constituting a crime, actual fraud, actual malice, or willful misconduct. *Id.*

In her Response to Kost's Motion to Dismiss, Plaintiff makes no argument regarding the viability of her negligence claim, or the effect of the PSTCA. (Docket No. 32). Plaintiff also fully incorporates by reference the opposition brief (Docket No. 32-1) filed in a companion case at 2:16-cv-01483. In this brief, the negligence claim is voluntarily dismissed. (Docket No. 32-1 at 17 n. 4). At oral argument, Plaintiff conceded that Kost's conduct did not amount to a crime, actual fraud, or actual malice. (Docket No. 42 at 14). Plaintiff also admitted that the Commonwealth Court of Pennsylvania in *Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. Ct. 1995) held that "willful misconduct" is synonymous with "intentional tort." (Docket No. 42 at 14). Plaintiff believed that Kost's conduct could be construed as willful misconduct, and that the Commonwealth Court's interpretation of willful misconduct was too narrow. (*Id.*).

However, Plaintiff noted that the Third Circuit Court of Appeals was unlikely to take his view. (*Id.* at 18). Indeed, the Third Circuit Court of Appeals has cited *Kuzel* for this very proposition. *Chizmar v. Borough of Trafford*, 454 F.App'x 100, 102 n. 4 (3d Cir. 2011) ("The term 'willful misconduct' is synonymous with 'intentional tort.'"). *See also M.U. v. Downingtown High Sch. East*, 103 F.Supp.3d 612, 631 (E.D. Pa 2015) (The degree of culpability required to demonstrate willful misconduct is tantamount to that of an intentional tort); *Ickes v. Grassmeyer*, 30 F.Supp.3d 375, 400 (W.D. Pa. 2014) (Willful misconduct requires allegations that defendant "*intentionally* committed these intentional torts."). Accordingly, and in light of Plaintiff's failure to plead facts demonstrating the applicability of an exception to immunity afforded under the PSTCA, the negligence claim at Count IV of the Complaint shall be dismissed.

## V. Conclusion

Based upon the foregoing, Defendants' Motions to Dismiss are granted, in part, and denied, in part. The Court finds that Plaintiff's Fourteenth Amendment substantive due process claim at Count I, to the extent raised pursuant to the state-created danger theory of liability, is viable. Plaintiff's claims asserted under *Monell*, shall also proceed. However, any substantive due process claim raised pursuant to a failure to investigate or reckless investigation, is dismissed, with prejudice. Similarly, Plaintiff's intentional infliction of emotional distress and negligence claims at Counts III and IV are dismissed, with prejudice.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: August 15, 2017

cc/ecf: All counsel of record.